IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Criminal Case No. SAG-23-394 |
| WAYNE LEE, | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Defendant Wayne Lee is charged with gun and controlled dangerous substance ("CDS") offenses in a three-count indictment stemming from a street arrest on July 10, 2023. Pending before the Court is Defendant's "motion to suppress tangible and derivative evidence obtained following illegal, warrantless seizure," ECF 42. This Court has reviewed the motion and associated briefing, ECF 49, 50. On May 28, 2025, the Court heard testimony and argument on Defendant's motion.[1] After careful review of the record, for the reasons that follow, the Court will deny Defendant's motion to suppress.

### I.   BACKGROUND

The following facts are derived from the testimony and exhibits presented at the motions hearing. At about 9 p.m. on June 10, 2023, Detective Brandon Butt observed live CitiWatch camera footage of the unit block of North Howard Street in Baltimore. He was observing that area because it suffers from a high number of crimes involving controlled dangerous substances (CDS) and

---

[1] For the reasons stated on the record at that hearing, this Court will also deny (without prejudice) Defendant's motion to suppress statements, ECF 43, and Defendant's motion to dismiss Count One, ECF 44.

1

violence. From Detective Butt's location, he was able to control the CitiWatch cameras, play back an event, and zoom in and out on a scene. He observed the Defendant and a friend with long dreadlocks ("the friend") walking on the block, crossing the street, and entering a busy corner store/deli. Detective Butt was familiar with the establishment because he had been involved in previous CDS and robbery investigations there. Detective Butt had also observed more than 100 hand-to-hand narcotics transactions in his career.

Defendant and his friend entered the store for several minutes. When they exited, Defendant held a small bag of chips in his hand. While standing on the sidewalk outside the store, Defendant and his friend spoke with a man wearing a gray zipper hoodie ("the customer"), who had also entered and exited the store. Defendant and his friend next began walking towards a semi-concealed corner next to a utility box on the side of the store, and the friend motioned the customer to join them. Once the customer situated himself in the corner, Defendant (with his back towards the camera) reached towards the customer. The friend was positioned between the ongoing transaction and the open sidewalk, concealing the transaction from view. The video then shows the customer with several small items cupped in his hand, and he lifted them facing the camera, revealing a reddish-orange hue to the items. When Defendant turned around and began walking towards the camera, he had the bag of chips in one hand and what appeared to be US currency in his other hand. He reached into his pants to place the currency into an "inside" pocket in his pants as he walked away with his friend.

Detective Butts called for an arrest team and left, with Officer Amador and Detective Jackson, to find Defendant. Because Detective Butts was driving the police vehicle, Officer Amador and Detective Jackson exited the vehicle first and approached Defendant. As the officers approached, Defendant and his friend stood still and put their hands in the air. Detective Jackson

immediately grabbed Defendant's wrists and held his hands behind his back. At that point, Officer Amador recovered six orange-top vials, containing suspected crack cocaine, from Defendant's right hand. The officers then handcuffed Defendant. By this point, at least four officers were on the scene. Further search of Defendant's person led to the recovery of a loaded handgun, additional drugs, and $937 in currency.

## II.     LEGAL STANDARDS

The government bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure is lawful. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *United States v. Jeffers*, 342 U.S. 48, 51 (1951). Probable cause to arrest exists where the facts and circumstances are "sufficient to warrant a prudent man in believing that [the defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "While probable cause requires more than 'bare suspicion,' it requires less than that evidence necessary to convict." *United States v. Walker*, 607 F. App'x 247, 253 (4th Cir. 2015) (citation and internal quotation marks omitted). Probable cause is examined under "an objective standard of probability that reasonable and prudent persons apply in everyday life." *Id.* (citation and internal quotation marks omitted). Thus, to determine the existence of probable cause, courts "examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act; [courts] do not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause." *Id.* (citation and internal quotation marks omitted). Finally, if police officers have probable cause to arrest, they may search suspects incident to that arrest to remove any weapons that the arrestee may use. *See Arizona v. Gant*, 556 U.S. 332, 338–39 (2009).

### III. DISCUSSION

Initially, the government offers two distinct arguments for the validity of the warrantless seizure in this case. First, it argues that the officers had probable cause to arrest Defendant as a result of Detective Butt's observations on the CitiWatch system. Second, it alternatively contends that the officers had reasonable suspicion to conduct an investigatory stop, which quickly heightened into an arrest once the officers discovered CDS in Defendant's hand. This Court is unpersuaded by the alternative argument, as it is evident from the video footage from Detective Jackson's body-worn camera that the interaction immediately exceeded the bounds of an investigatory stop. Detective Butt testified that he had instructed the officers to arrest Defendant. As the two officers approached Defendant, Defendant's arms were raised in the air. Detective Jackson grabbed his arms and placed them behind his back to apply handcuffs, thus allowing the discovery of the CDS in his closed hand. Defendant's freedom of action was immediately curtailed in a manner consistent with formal arrest (which had been the officers' admitted intent at the outset). While handcuffing can be part of an investigative stop where there is reasonable suspicion to believe a subject is armed, here there is nothing about the information known to the officers that would have suggested Defendant was armed or dangerous. They had witnessed a single hand-to-hand drug transaction by an unknown suspect, who acted compliantly by stopping and raising his hands in the air as police approached. The officers immediately took steps to effect his arrest, and the sole question before this Court, then, is whether they had probable cause to do so.

As reviewed above, the officers knew the following before effecting the arrest: (1) the transaction occurred at a deli that had been the site of previous CDS and robbery investigations, within a neighborhood marked by CDS activity and violence; (2) Detective Butt had observed, on the CitiWatch camera system, a transaction in which a customer approached Defendant and his

4

friend outside the deli, the friend motioned for the customer to step into a darker corner shielded by a utility box and stood in a position to conceal the transaction from view from the sidewalk, Defendant gave the customer small items appearing to have an orange or red top, the customer walked away with the items, and Defendant walked away from the customer with money in his hand that he then placed into an inner pants pocket; and (3) that transaction was consistent with Detective Butt's training and extensive experience in CDS cases.

Maryland courts have addressed the precise issue of whether a single hand-to-hand transaction observed over CitiWatch cameras constitutes probable cause. In *Williams v. State*, 188 Md. App. 78 (Ct. Spec. App. 2009), the then-Maryland Court of Special Appeals found probable cause where a detective experienced in investigating and observing illegal drug transactions monitored CitiWatch cameras on a block known for drug trafficking activity. *Id.* at 82. The detective observed two men have a brief conversation and take particular caution "to conceal the small object being passed from one to the other." *Id.* at 96. The court acknowledged that the detective "could not specify the objects passed between the two men" but mentioned "other evidence of furtive behavior, by which the men sought to conceal what they were exchanging." *Id.* The court noted that the detective "did not need absolute certainty in regard to the objects that were exchanged here in order to obtain probable cause." *Id.* Ultimately, the Court held that the order for arrest was not illegal because ethe detective "had probable cause to believe he observed appellant commit a CDS offense." *Id.*

Similarly, in *Donaldson v. State*, 416 Md. 467, 482 (2010), the now-Supreme Court of Maryland found probable cause where an experienced officer saw that a defendant "was walking with a group of people, removed a clear bag from the rear of his pants, took two small white objects from that bag, and exchanged those objects for money." The investigating officer testified that the

5

"method of keeping the items in a plastic bag in the rear of his pants was undoubtedly suspicious" and that gathering "in a corner by an alleyway when they made this exchange" suggested a desire to conceal the activity. *Id.* The officer also testified that the area was known for drug trafficking and that he had extensive training in experience in narcotics transactions. *Id.* at 483. The now-Supreme Court found that "these facts were sufficient to establish probable cause to believe that a crime had just been committed." *Id.*

While this Court is not bound by Maryland state court precedent in analyzing the constitutionality of the officers' actions here, it finds the state courts' rationale in those analogous cases to be persuasive. Detective Butt had far more than a "bare suspicion" of criminal activity on June 10, 2023. He, as an experienced detective who had observed "more than a hundred" hand-to-hand transactions, personally observed a transaction, purposefully conducted in a semi-concealed location, involving an exchange of small objects for money outside a storefront known for prior CDS and criminal activity. That conduct warrants the belief of a prudent person that Defendant had committed or was committing a CDS offense. *See United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984).

By contrast, the cases Defendant cites from the Fourth Circuit are not on point because they do not address the standard required for probable cause to arrest.[2] In *United States v. Ward*, 465 F. App'x 260, 262 (4th Cir. 2012), the Fourth Circuit assessed "whether the police had the requisite reasonable suspicion to initially detain" the defendant, Ward. It concluded that where reliable informants had told officers about drug activity at Ward's residence, the officers had

---

[2] Defendant also cites an unpublished case from another judge of this Court finding that a certain collection of circumstances constituted reasonable suspicion to conduct an investigative stop but "likely did not support probable cause to conduct a warrantless arrest." *United States v. Chase*, RDB-23-296, 2025 WL 934511, at *4–7 (D. Md. 2025). The dicta in that case is not binding on this Court.

apprehended a customer who told them he bought marijuana from Ward, and "an officer observed Ward engage in what appeared to be a hand-to hand transaction," the officers "could form a reasonable suspicion that Ward was engaged in criminal activity." *Id.* After finding that the totality of the circumstances met the lower "reasonable suspicion" bar, the Fourth Circuit did not address whether the officers would have had probable cause to arrest Ward on those same facts.

The Fourth Circuit also addressed reasonable suspicion in *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997). In that case, the court analyzed a situation where police, knowing that a defendant had a prior criminal record and was in a high crime area, observed the defendant and a passenger huddled towards the center console of a parked vehicle. The Fourth Circuit found that those facts, even taken in a totality, did not amount to reasonable suspicion justifying an investigative stop. Once again, after finding even reasonable suspicion to be lacking, the Fourth Circuit did not reach the issue of probable cause to arrest.

In *United States v. Foster*, 634 F.3d 243, 248 (4th Cir. 2011), the Fourth Circuit again considered whether officers had a reasonable articulable suspicion that the defendant was engaged in criminal activity, warranting an investigative detention. The detective knew the defendant had a prior criminal record, saw him suddenly appear from a crouched position in a parked car when the detective approached, and watched him make "frenzied arm movements" down towards the floor of the car. *Id.* at 246. The Fourth Circuit found that those cumulative facts were not sufficient to amount to reasonable articulable suspicion, particularly since the defendant had "acknowledged the officer, was not noticeably nervous, and did not hastily flee the area" and the incident occurred in "a low crime area" where the detective "had no knowledge of any drug related activity occurring nearby." *Id.* at 248.

Finally, in *United States v. Johnson*, 599 F.3d 339, 344 (4th Cir. 2010), the Fourth Circuit found that officers had reasonable suspicion for an investigative stop where a defendant made similar, furtive hand-to-hand contact with multiple people who then hurried away, while located on a street known for drug dealing, and one of the suspected customers "veered off at the sight of the police." In this case, also, the Fourth Circuit did not analyze whether the officers would have had probable cause to arrest in the first instance.

None of those four Fourth Circuit cases presented analogous facts or legal issues to those presented here. In this case, a detective with experience observing hand-to-hand narcotics transactions personally viewed, in significant detail over the CitiWatch system, a hand-to-hand exchange of small objects for money after the participants intentionally secreted themselves in a semi-concealed location outside of a shop known for CDS transactions in a high-crime neighborhood. None of the Fourth Circuit cases presented equivalent observation of a narcotics transaction. And in none of the cited cases did the Fourth Circuit consider whether a detective observing a concrete hand-to hand transaction had probable cause to arrest, because the cases only evaluated reasonable suspicion for an investigative stop.  Taking the circumstances in this case in their totality, this Court agrees with the Maryland courts that the facts in this case support probable cause to believe Defendant sold drugs in a hand-to-hand transaction and justified his arrest by the officers.

Finally, this Court is unpersuaded by Defendant's efforts to impugn Detective Butt's observations. Defendant first argues that Detective Butt inaccurately reported that Defendant was "standing" on the street when in fact he was walking. As Detective Butt is correct that one cannot walk without also standing, and because the standing/walking occurred well before the purported transaction or any unlawful activity, this Court does not find the imprecise phraseology diminishes

8

Detective Butt's credibility in any way. Defendant also suggests that the video evidence does not reflect the detailed observations Detective Butt claims he made. Having reviewed the CitiWatch exhibit carefully in the courtroom and in chambers, this Court disagrees. The video is very sharp and clear, even on an office computer. When one slows down and replays the video, one can see small items in the customer's hand and a reddish-orange hue. And while the item in Defendant's hand cannot be positively identified as United States currency, it is fully consistent in size and shape. This Court credits Detective Butt's credible testimony that he was able to observe additional detail on the CitiWatch system that was not as readily evident when playing the video in the courtroom. While preserved video is always helpful in capturing events for court review, it is impossible to completely capture the vantage point of someone observing events on-scene (or, as here, on different monitoring equipment in a different setting). But the evidence that has been preserved in this case generally corroborates Detective Butt's credible testimony about his observations. This Court therefore fully credits his testimony in concluding that the officers had probable cause to arrest Defendant.

## IV. CONCLUSION

For the reasons stated above, the Court denies Defendant's motion to suppress, ECF 42, along with his other two pending motions, ECF 43 and 44. A separate Order follows.


Dated: June 20, 2025               /s/
                                   Stephanie A. Gallagher
                                   United States District Judge